## Case No. 8,759.

### McDONALD et al. v. The CABOT.

### [Newb. 348.] [1]

District Court, D. Louisiana. Nov., 1844.

ATTORNEY AND CLIENT—PROCTOR—SUIT FOR FEES—SETTLEMENT BY PARTIES INTER SE.

1. A suit by a proctor in the admiralty for his costs or fees, is a familiar proceeding in the admiralty tribunals both in this country and in England.

2. Where wages due from a master to the seamen, are seized under a process of garnishment from a local court in the hands of the former, at the very time that a suit for a penalty and wages brought by those seamen against the master, is pending in the United States district court sitting as a court of admiralty, it is the duty of the master not to pay over the money before the expiration of the legal delay for the return of the garnishment, without the knowledge of the proctors in the admiralty suit. A payment under such circumstances will render the master responsible for the costs of the opposing proctor, if the latter has thus been prevented from receiving them from his own clients in the ordinary way.

3. Negotiations for the adjustment of a suit in admiralty should be conducted in the presence of the proctors of the parties, as they have a per-

[1] [Reported by John S. Newberry, Esq.]

sonal and legal weight and a direct responsibility to the court.

In admiralty.

McCALEB, District Judge. The libel in this case was filed on behalf of a portion of the crew of the ship Cabot, claiming from the captain of said ship the penalty which they allege he had incurred, in consequence of putting them on a short allowance of provisions on the voyage from Dieppe and Bordeaux to the port of New Orleans. The amount claimed is $144. Three of the libelants, Alexander Gent, George Coffin and James Frost, also claim the sum of $198 as wages, which they allege to be due. The claim for the penalty for being subjected to a short allowance of provisions, is based upon the provisions of the act of congress of July 20, 1790, § 9 [1 Stat. 135], being an "Act for the government and regulation of seamen in the merchant service." I have attentively examined the testimony taken before the commissioner and introduced in evidence on the trial of the cause, and can find no just grounds for sustaining the first allegation of the libel. The testimony of McDonald, who was examined before the court, shows that on the voyage from Bordeaux to this port the crew were put on a short allowance of meat: that they did not have for a whole day more than enough for one meal; but that they did not trouble themselves to see to the weighing of the meat, and supposes that if they had tried they could have got more: that for eight or ten days before they arrived at the port of New Orleans, they had no meat, because not being able to get enough they did not trouble themselves to get any. This evidence is entirely disproved by the concurrent testimony of the first and second mate and the steward of the ship. They show that the ship had on board an abundance of provisions, more than sufficient for the passengers and crew: that the crew were put on an allowance of meat, but not on short allowance, each man having been allowed a pound and a half per day, which is the usual allowance. I shall, therefore, dismiss without further comment this part of the case, and shall now proceed to the main question at issue. The wages demanded by the libelants, or so much thereof as were really due, have been paid by the master after the libel was filed, out of court, and out of the presence and without the knowledge of the proctor who brought the action. This suit is now prosecuted by that proctor for the recovery of his costs. It is a proceeding familiar to the admiralty tribunals of this country and in England.

In this case, it appears from the evidence, that the wages due from the master to the libelants, were seized in the hands of the former under a garnishment from one of the associate city courts of this city. Immediately on the institution of the suit in that court against the libelants, they confessed judg-

ment. The master, upon receiving the garnishment, acknowledged himself indebted to the seamen for wages. The service of the garnishment was made on the 7th instant. On the afternoon of the 8th instant the money was paid to the deputy marshal of the city court, in the presence and with the approbation of the defendants in the suit, who are also the libelants in the present action. On the 7th instant the libel in the case was filed, and on the morning of the 8th it was served on the master. It was therefore in his hands at the time he paid the money under the garnishment, and he cannot plead ignorance of the fact that the libel was filed; and with a copy of it in his hands, he was not justified in taking for true the representations of the libelants, that they had not libeled the ship. He was not bound to answer the garnishment until two days after he received it; that he was bound to pay the money, will hardly be doubted. The seizure from the city court had created a lien on the amount of wages in his hands which he was bound to satisfy. It was his duty, however, instead of paying the money at the solicitation of the libelants in such unnecessary haste and under circumstances most suspicious, to have communicated the intelligence of the seizure to their proctor to enable him to take such measures against his clients as would save him against an evident attempt to defraud him out of a compensation for his professional services, and to render him liable for the costs of a proceeding which had been instituted at their request and for their benefit. The conduct of this master does not seem to have been characterized by that candor which was due to the court, to say nothing of the proctor of the libelants. Instead of bringing to the notice of the court the fact of the seizure and the payment of the wages under it, a rule is taken by his proctor on the 11th instant (three days after the payment of the money to the libelants, and after they had embarked for a northern port), for them (the libelants) to show cause, on the 13th instant, why they should not furnish security for costs, or have their libel dismissed. This proceeding can be regarded as little less than a mere mockery, when we remember that it was within the knowledge of the master that the means by which the libelants could alone answer the rule had been paid by himself, under an order of court to satisfy a debt or a pretended debt due by them.

I am clearly of the opinion that the settlement of this suit out of the presence and without the knowledge of the proctors, was entirely irregular. It was the opinion of Lord Stowell, expressed in the case of The Frederick, 1 Hagg. Adm. 220, that negotiations for an adjustment of a suit should be conducted in the presence of the proctors for the parties, as they have a personal and legal weight, and a direct responsibility to the court. This principle has been sanctioned by the highest admiralty tribunal in this country, and its maintenance is regarded as indispensably necessary to prevent those deceptions which are commonly practiced upon ignorant seamen, and which they, in turn, are but too apt to practice upon their proctors and upon the officers of court, with the view of avoiding the payment of costs. It is the duty of the court, and it should be the mutual care of the opposing proctors, to preserve the dignity of the profession, by discountenancing everything which is calculated to subject its members to the chance of becoming the dupes of designing litigants. While I have no hesitation in giving them the aid of the principle of law now invoked, to protect them from injury in all cases where proper caution is observed in the institution of suits, which, in their apprehension, are just and proper, I shall feel as little hesitation in making them suffer the consequences of permitting themselves to become the instruments of promoting frivolous litigation, or gratifying a spirit of malignity and oppression. The proctor in this case has proved that he rendered services to the libelants. His compensation for those services has been defeated by the settlement of the case out of court without his knowledge. He has, however, failed to prove the value of those services, and I am unwilling to assume the province of putting an estimate upon them. Instead of referring the case to a commissioner for the purpose of taking proof upon the subject, and thereby subjecting the parties to additional expense and trouble, I will venture to fix a compensation subject to the approval or disapproval of the respondent. Should he object to the amount upon the ground of its being too large, I will order specific proof to be made. I will fix the amount at $25, exclusive of the tax fee allowed by law. This amount, together with the costs of court, I order to be paid by the respondent.